[No. 25209-7-I. Division One. May 13, 1991.]

THE STATE OF WASHINGTON, *Appellant,* v. THOMAS SYROTCHEN, *Respondent.*

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for appellant.

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association,* for respondent.

WEBSTER, A.C.J.—The State of Washington appeals a dismissal of charges against Thomas Syrotchen, based on the trial court's conclusion that the 120–day speedy trial

time limit of the Interstate Agreement on Detainers had been violated. We reverse.

## FACTS

On May 12, 1989, Syrotchen was taken into federal custody and began serving a sentence imposed by the federal District Court. By agreement with the Snohomish County Sheriff as an agent for the United States Marshal, Syrotchen was placed in Snohomish County Jail under federal authority.

On June 15, 1989, Syrotchen was charged in Snohomish County Superior Court with two counts of second degree child molestation and two counts of indecent liberties. On June 16, 1989, Syrotchen was arraigned by video camera, while he remained in jail under federal custody. On June 21, 1989, the court set trial for August 1, 1989.

On June 23, 1989, federal authorities removed Syrotchen from the Snohomish County Jail and transported him to a federal prison in Colorado. On July 28, 1989, the State moved for a continuance of the trial date, arguing that there was "good cause" for a continuance since under the Interstate Agreement on Detainers (IAD) it would take at least 90 days to return Syrotchen to Snohomish County from Colorado. The court granted the motion and continued trial to November 27, 1989, allowing for a later challenge if necessary.

On November 2, 1989, Syrotchen filed a motion to dismiss the charges, alleging that both the IAD and the CrR 3.3 speedy trial requirements had been violated. On November 3, 1989, a second trial judge held that there had been a lack of "good cause" to grant the initial continuance since the State should have instituted detainer proceedings at the time of arraignment (June 16). The trial judge then dismissed the case for a violation of the IAD.

## DISCUSSION

The IAD, RCW 9.100.010, deals with situations where a prisoner held by one state (the sending state) has charges pending in another state (the receiving state), and the

receiving state seeks to obtain the prisoner for trial. The term "state" as used in the IAD includes the United States (Article 2(a)). IAD Article 2(b) defines the sending state as the "state in which a prisoner is incarcerated . . . at the time that a request for custody or availability is initiated". In this case, the federal government in Colorado was the sending state since Syrotchen was incarcerated there when Washington requested custody. IAD Article 2(c) defines the receiving state as "the state in which trial is to be had on an indictment, information or complaint". The State of Washington was the receiving state.

Article 4 of the IAD provides a procedure by which the receiving state can gain the defendant's presence for trial from the sending state.[1] If trial is not "commenced within one hundred twenty days of the *arrival* of the prisoner in the receiving state," then the case is dismissed for a violation of the IAD's speedy trial rule. (Italics ours.) IAD Article 4(c).

Here, the second trial judge, at the November 3, 1989, hearing, ruled that Syrotchen had arrived in Washington when he was arraigned on June 16, 1989. Therefore, according to him, Washington became the receiving state

---

[1]The relevant portions of Article 4 provide:

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: . . . *Provided further,* That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

" . . . .

"(c) In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

on June 16, at which time, again according to him, the IAD 120–day speedy trial time limit began to run.

The 120–day time limit does not begin to run until the defendant "arrives" in the receiving state. Syrotchen did not arrive in Washington until he was returned to this state from Colorado for the November 3, 1989, hearing. He had not "arrived" by the mere fact that he was sitting in Washington as a federal prisoner. Contrary to the second trial judge's ruling, Syrotchen was, until his return from Colorado to Washington, at all times a federal prisoner even during the arraignment (which was a courtesy to state officials and took place via video camera while Syrotchen remained in jail). His fortuitous circumstance of having been detained in Washington as a federal prisoner does not mean that he had "arrived" in this state for purposes of the IAD. The IAD was not violated since the 120–day time limit did not begin to run until November 3.

Even if we were to assume that Syrotchen had "arrived" on June 16 when he was arraigned, there was good cause to grant the initial continuance, contrary to the second trial judge's ruling. Under Article 4(c), the court "may grant any necessary or reasonable continuance" for "good cause shown in open court". The second trial court ruled that since the State had allowed Syrotchen to be removed and did not become aware of the fact until a month later, there had been no good cause to grant the initial continuance. The court then held that the 120–day limit had expired, thereby necessitating dismissal. This ruling was in error.

The trial court's original continuance was based on good cause since under the IAD it would take 90 days to obtain Syrotchen's presence from Colorado. In addition, the prosecutor neither "allowed" Syrotchen to be removed nor was responsible for insuring that he remained in Washington.

Our courts have held that "[t]he granting or denial of a continuance rests within the sound discretion of the trial court". *State v. Alford,* 25 Wn. App. 661, 665, 611 P.2d 1268 (1980), *aff'd sub nom. State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981). It will not be disturbed on

review absent "a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The trial court's discretionary decision was to *grant* the continuance. This decision was not an abuse of discretion since a continuance was necessary to obtain Syrotchen's presence for trial.

We next decide whether Syrotchen's CrR 3.3 speedy trial rights were violated. Under CrR 3.3(c)(1), a defendant who remains in jail pending trial "shall be brought to trial not later than 60 days after the date of arraignment." However, CrR 3.3(g)(6) provides:

> **(g)** *Excluded Periods.* The following periods shall be excluded in computing the time for arraignment and the time for trial:
>
> . . . .
>
> (6) The time during which a defendant is detained in jail or prison outside the state of Washington or in a federal jail or prison and the time during which a defendant is subjected to conditions of release not imposed by a court of the State of Washington.

Our courts have read into CrR 3.3(g)(6) a duty of good faith and due diligence. *State v. Pizzuto,* 55 Wn. App. 421, 431–32, 778 P.2d 42, *review denied,* 113 Wn.2d 1032 (1989). Syrotchen claims that due diligence was not shown since the prosecutor's office took no action to secure his presence after the initial arraignment and since proceedings under the IAD were not instituted until over a month after federal authorities removed and transported him to Colorado.

This claim must fail. First, the State is not responsible for tracking a federal prisoner's process through the federal system. Second, the State did exhibit due diligence by moving for a continuance when it was discovered that Syrotchen had been removed to Colorado. This cannot be viewed as a failure to take action to secure his presence since it was the exact opposite: the State was attempting to gain his presence. Furthermore, the prosecutor's good faith throughout the proceedings has never been questioned. We

hold that the period in which Syrotchen was detained as a federal prisoner was excusable under CrR 3.3(g)(6), and, therefore, there was no CrR 3.3 speedy trial violation.

The judgment is reversed.

PEKELIS and FORREST, JJ., concur.