[No. 27331-1-I.   Division One.   May 4, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. EARL JOSEPH ANDERSON, *Appellant*.

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

BAKER, J. — Earl Anderson appeals the trial court's denial of his motion to dismiss, contending that his right to a speedy trial under CrR 3.3 was violated when he demanded a speedy trial while in federal custody, but was not brought to trial for over 1 year. We reverse.

I

Appellant was convicted of second degree burglary and given a 22-month sentence, which he completed during the pendency of his appeal in this court. After his discharge from state prison, appellant was transferred into federal custody on other charges.

This court then reversed appellant's conviction due to an instructional error, and remanded the case for retrial. When the motion to set the retrial date was heard, defense counsel appeared and stated that appellant was in federal custody.

Shortly thereafter the appellant made a speedy trial demand. In May 1989, after receiving no reply from the prosecutor's office, the appellant again notified the prosecutor's office of his demand for a speedy trial. In July 1989 appellant's counsel moved for a trial date within the time limits prescribed in RCW 9.100.010, the Interstate Agreement on Detainers (IAD). The State responded that it could not grant relief under the IAD because the demand had been improperly delivered to the prosecutor, instead of to the prison authorities as prescribed under the statute, and no detainer had been lodged against the appellant.

The trial court heard the motion to set a date for retrial in August 1989. When appellant's counsel advised the court that he was waiting for a response from the appellant, the parties agreed to have the motion stricken, subject to being renoted.

In December 1989 the appellant requested assistance from the prison authorities in filing under the IAD. The prison warden responded that he was unable to assist the appellant because Washington had not lodged a detainer against him. In a letter to his attorney, the appellant stated that he had also requested assistance from the warden approximately 1 year earlier.

Neither party took further action on the case until July 1990, when the parties jointly moved for issuance of a writ of habeas corpus. Appellant appeared in court on August 17, 1990, and trial was set for October 29, 1990. Prior to trial, the trial court denied a motion to dismiss for violation of CrR 3.3, and appellant was again convicted of second degree burglary.

## II

Appellant's speedy trial rights are prescribed by two sections of CrR 3.3. Under former CrR 3.3(d)(4), the appellant was entitled to a trial within 60 or 90 days of his appearance in superior court:

> *Retrial After Appeal.* If a cause is remanded for trial after an appellate court accepts review, the defendant shall be brought to trial not later than 60 days after that appearance by or on behalf of the defendant in superior court, with notice to both parties of any such appearance, which next follows receipt by the clerk of the superior court of the mandate or other written order, if after such appearance the defendant is detained in jail, or not later than 90 days after such appearance if the defendant is thereafter released whether or not subject to conditions of release.

Former CrR 3.3(d)(4).

CrR 3.3(g)(6) provides that "[t]he time during which a defendant is detained in jail or prison outside the state of Washington or in a federal jail or prison and the time during which a defendant is subjected to conditions of release not imposed by a court of the State of Washington" shall be excluded in computing the time for trial. CrR 3.3(g)(6).

■ This court has interpreted CrR 3.3(g)(6) as requiring the State to act in good faith and with due diligence in seeking extradition:

> We hold that when CrR 3.3(g)(6) is applied to exclude time periods not excluded under CrR 3.3(g)(2), the defendant's unavailability must be tested under the "good faith and due diligence" rule. This test is necessary for the same reasons underlying the requirement that good faith and due diligence be shown when the defendant is allegedly unavailable, and is a logical extension of the rule.

*State v. Pizzuto*, 55 Wn. App. 421, 432, 778 P.2d 42, *review denied*, 113 Wn.2d 1032 (1989).

We subsequently applied the "good faith and due diligence" standard to CrR 3.3(g)(6) in *State v. Syrotchen*, 61 Wn. App. 261, 810 P.2d 64, *review denied*, 117 Wn.2d 1014 (1991). In *Syrotchen*, the prosecutor failed to take action to secure the defendant's presence until after the initial arraignment. We held that that delay, and the delay of 1 month between the defendant's removal to a foreign jurisdiction and the time that proceedings under the IAD were instituted, did not constitute a lack of good faith and due diligence. *Syrotchen*, 61 Wn. App. at 266.

Appellant argues the trial court erred in denying his motion to dismiss pursuant to CrR 3.3 because the State failed to bring him promptly to trial and therefore did not satisfy the "good faith and due diligence" requirement under CrR 3.3(g)(6) and *State v. Pizzuto, supra*. The State urges us to reject *Pizzuto* and hold that the time during which a defendant is detained in a federal prison is excluded from the time-for-trial computation under the unambiguous language of CrR 3.3(g)(6), citing two cases decided prior to *Pizzuto* to support its position.

In the first cited case, the defendant was charged with robbery and a warrant was issued for his arrest in 1980. *State v. Newcomer*, 48 Wn. App. 83, 737 P.2d 1285, *review denied*, 109 Wn.2d 1014 (1987). When Cowlitz County authorities learned that the defendant was incarcerated in Oregon, they lodged a detainer against him and requested extradition. The defendant requested that Cowlitz County drop the detainer, stating that he wished to participate in rehabilitative programs at the Oregon Penitentiary. The detainer eventually was lifted. *Newcomer*, 48 Wn. App. at 85.

Upon his release by Oregon in 1985, the defendant was arrested and transported to Washington for trial. The defendant contended that his constitutional right to a speedy trial was violated by the 5-year delay after the information was filed. The Court of Appeals stated:

> This issue involves the relationship of federal and state constitutional rights to a speedy trial with the Interstate Agreement on Detainers (IAD), RCW 9.100.010 *et seq.* It does not involve compliance with CrR 3.3 because CrR 3.3(g)(6) excludes the time during which a defendant is detained in jail or prison outside Washington.

*Newcomer*, 48 Wn. App. at 86.

The court concluded that the defendant had not been deprived of his constitutional right to a speedy trial, in part because the defendant had requested that the State lift the detainer against him. In so ruling, the court noted that although

> the State must make a diligent good faith effort to bring defendants to this state for trial when incarcerated in another jurisdiction, and although the State could have returned Mr. Newcomer to this state using IAD article 4 procedures, the prosecution cannot be penalized where Mr. Newcomer's own request prompted the State's inaction, and no prejudice resulted.

*Newcomer*, 48 Wn. App. at 91.

In the second case relied upon by the State, a warrant issued for the defendant's arrest for first degree escape. *State v. Carmichael*, 53 Wn. App. 894, 771 P.2d 364, *review denied*, 113 Wn.2d 1001 (1989). After his arrest and conviction on two counts of murder in Nevada, the defendant notified the prosecutor's office and requested that he be returned to Washington to stand trial. The prosecutor denied the defendant's request.

Washington and Nevada subsequently agreed that the defendant would serve the remainder of his Washington sentence in Nevada but that Washington would maintain jurisdiction over him. After an attempted escape, the defendant was transferred to the Washington State Reformatory. The State then filed an information charging the defendant with escape and kidnapping.

Prior to trial, the defendant brought a motion to dismiss the charges against him on grounds that his right to a speedy trial under CrR 3.3 had been violated. He argued that the speedy trial period was triggered by the Washington-Nevada agreement that Washington would maintain jurisdiction over him. This court disagreed, stating:

> CrR 3.3(g)(6) specifically excludes from calculation of the speedy trial period "[t]he time during which a defendant is detained in jail or prison *outside the State of Washington* or in a federal jail or prison." . . . The rule refers to the location of the prisoner, not the jurisdictional status as argued by Carmichael. The court has no power to insert new provisions into a rule that is plain on its face. Therefore, we conclude the speedy trial period did not begin to run until Carmichael's actual return to custody in Washington on December 18, 1986.

(Citations omitted.) *Carmichael*, 53 Wn. App. at 896.

We acknowledge the inconsistency between the *Carmichael* and *Pizzuto* cases. However, the good faith and due diligence requirement articulated in *Pizzuto* is consistent with federal case law in which the United States Supreme Court has held that upon demand, a state has a constitutional duty to make a diligent, good faith effort to bring a defendant serving time in another jurisdiction before the court for trial. *Smith v. Hooey*, 393 U.S. 374, 21 L. Ed. 2d 607, 89 S. Ct. 575 (1969). The Supreme Court rejected the notion that an incarcerated person will not suffer prejudice from delay in bringing untried charges to trial. The court noted that such delays could result in (1) the defendant losing the possibility of receiving a sentence at least partially concurrent with the one being served; (2) the duration of his imprisonment may be increased by the pendency of another criminal charge against him; and (3) an inability to consult with counsel. *Smith v. Hooey*, 393 U.S. at 378-79. *See also Dickey v. Florida*, 398 U.S. 30, 26 L. Ed. 2d 26, 90 S. Ct. 1564 (1970).[1]

---

[1] These cases address speedy trial rights under the Sixth Amendment.

"The major distinction between a claimed violation under Rule 3.3 and an alleged denial of a constitutional speedy trial right is the degree of proof. A defendant who has not been brought to trial within the time limits of the rule is

The American Bar Association Standards for Criminal Justice provide further support for the due diligence requirement:

**Standard 12-3.1. Prosecutor's obligations; notice to and availability of prisoner**

To protect the right to speedy trial of a person serving a term of imprisonment either within or without the jurisdiction, it should be provided by rule or statute and, where necessary, interstate compact that:

(a) if the prosecuting attorney knows that a person charged with a criminal offense is serving a term of imprisonment in a penal institution of that or another jurisdiction, he or she must promptly:

(i) undertake to obtain the presence of the prisoner for trial; or

(ii) cause a detainer to be filed with the official having custody of the prisoner and request the official to so advise the prisoner and to advise the prisoner of his or her right to demand trial[.]

2 American Bar Ass'n, *Standards for Criminal Justice*, Std. 12-3.1, at 12.34 (2d ed. 1980).

Detainer acts generally do not require a prosecutor to go to trial promptly unless there is a detainer lodged against the prisoner and the prisoner has demanded a speedy trial. RCW 9.100.010 *et seq.* does not expressly require the prosecutor to seek a detainer or affirmatively determine whether the prisoner wants a speedy trial. The commentary following ABA standard 12-3.1 states that the

above standard, addressed to the broader problem of a prisoner's right to speedy trial, requires the prosecutor to initiate procedures whereby the prisoner may demand trial whenever the prosecutor does not choose to undertake an immediate trial.

2 American Bar Ass'n, *Standards for Criminal Justice*, Std. 12-3.1, Commentary at 12.37. The rationale underlying the ABA standard is further articulated as follows:

Such a requirement is appropriate, for otherwise the prisoner's right to speedy trial could be circumvented by delay on the

---

not required to show actual prejudice or prosecutorial misconduct; a Sixth Amendment speedy trial challenge, however, requires not only prosecutorial delay, but also substantial damage to the defendant's ability to prepare for trial." (Footnote omitted.) 12 R. Ferguson, Wash. Prac., *Criminal Practice and Procedure* § 1207, at 231 (1984).

part of the prosecutor in lodging a detainer against the prisoner. It seems clear that a prisoner can be disadvantaged by delay even during the period when no detainer has been lodged against him or her. Indeed, delay in the trial of a person serving a sentence on another offense can be even more prejudicial than otherwise, for the defendant in custody is in no position to find witnesses or otherwise preserve his or her defense.

2 American Bar Ass'n, *Standards for Criminal Justice*, Std. 12-3.1, Commentary at 12.37.

■ Washington courts rely on the ABA standards to evaluate situations not within the coverage of CrR 3.3. *State v. Peterson*, 90 Wn.2d 423, 585 P.2d 66 (1978) (citing *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976)); *State v. Parmele*, 87 Wn.2d 139, 550 P.2d 536 (1976); *State v. Elizondo*, 85 Wn.2d 935, 540 P.2d 1370 (1975). However, the court will look to the ABA standards only in those situations in which the rule fails to address a particular issue. *Peterson*, 90 Wn.2d at 429.

■ The appellant's argument is supported by our decision in *Pizzuto* and the strong public policy articulated in the ABA standard and accompanying commentary. While requiring prosecutors to lodge detainers against defendants and promptly secure their presence for trial may result in additional expense or give rise to some of the problems associated with detainers,[2] these considerations do not outweigh the fundamental concerns underlying a defendant's right to a speedy trial. As stated by the Supreme Court, "the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." *Dickey v. Florida*, 398 U.S. 30, 38, 26 L. Ed. 2d 26, 90 S. Ct. 1564 (1970).

---

[2]The American Bar Association Standards for Criminal Justice state that few areas of correctional administration have received more sustained criticism than practices surrounding the use of detainers, citing the low percentage (10 percent) of detainers resulting in conviction or further imprisonment and the tendency for detainers to preclude prisoners from participating in rehabilitative-type programs. 3 American Bar Ass'n, *Standards for Criminal Justice*, Std. 18-4.6, at 18.305 (2d ed. 1980).

In light of our recent decision in *Pizzuto*, the strong public policy underlying the speedy trial rule, and the ABA standard addressing the issue presented in this case, we conclude that under CrR 3.3(g)(6) we must test the defendant's unavailability under the good faith and due diligence rule. Here, the State does not argue that it did exercise good faith and due diligence to retry the defendant. The State's failure to utilize mechanisms for promptly bringing the appellant to trial constitutes a lack of due diligence. Accordingly, the period during which the appellant was in federal custody should not be excluded from the computation of the speedy trial period. Thus, because the speedy trial period under former CrR 3.3(d)(4) was exceeded, we reverse.

GROSSE, C.J., and KENNEDY, J., concur.

Review granted at 120 Wn.2d 1007 (1992).