J-S73001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| TERRANCE BERNARD ROBINSON | : | |
| | : | |
| Appellant | : | No. 595 MDA 2017 |

Appeal from the PCRA Order March 27, 2017
In the Court of Common Pleas of Adams County Criminal Division at No(s):
CP-01-CR-0000706-2013

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                        **FILED JUNE 22, 2018**

Appellant, Terrence Bernard Robinson, appeals from the order entered on March 27, 2017, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  In June 2012, the Commonwealth charged Appellant with criminal conspiracy, three counts of possession with intent to deliver (PWID) cocaine, and three counts of criminal use of a communications facility.[1]   At the time, Appellant's whereabouts were unknown.  On September 19, 2012, police took Appellant into custody on unrelated charges in Baltimore, Maryland.  Thereafter, the Commonwealth entered a detainer against him.  On April 12,

_____

[1] 18 Pa.C.S.A. § 903, 35 P.S. § 780-113(a)(30), and 18 Pa.C.S.A. § 7512, respectively.

_____

2013, Appellant requested that the Commonwealth dispose of the charges pursuant to the Interstate Agreement on Detainers (IAD), 42 Pa.C.S.A. § 9101, *et seq*.[2]   As a result, Maryland authorities returned Appellant to Pennsylvania on June 6, 2013.  Counsel for Appellant sought, and received, two continuances of Appellant's preliminary hearing. The trial court held the preliminary hearing on July 31, 2013, wherein all charges were bound for court.  On September 23, 2013, the trial court formally arraigned Appellant, who then formally requested a jury trial.  On December 2, 2013, prior to jury selection, Appellant presented a motion to dismiss all charges for violating Article III(a) of the IAD, claiming that he was not brought to trial within 180 days of his request for final disposition of the charges.  The trial court continued the trial until the January 2014 term, so that it could hold a hearing on Appellant's motion to dismiss on December 3, 2013.  Following that hearing, the trial court denied Appellant's motion to dismiss.

---

[2] "The IAD is an agreement between forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, that establishes procedures for the transfer of prisoners incarcerated in one jurisdiction to the temporary custody of another jurisdiction which has lodged a detainer against a prisoner." **Commonwealth v. Jones**, 886 A.2d 689, 695 (Pa. Super. 2005) (citations omitted).  "Unlike a request for extradition, which is a request that the state in which the prisoner is incarcerated transfer custody to the requesting state, a detainer is merely a means of informing the custodial jurisdiction that there are outstanding charges pending in another jurisdiction and a request to hold the prisoner for the requesting state or notify the requesting state of the prisoner's imminent release." **Id.** (citations omitted).

On January 14, 2014, Appellant entered into an agreement with the Commonwealth wherein the parties stipulated to facts that were sufficient to find Appellant guilty of criminal conspiracy and three counts of PWID.[3] In exchange, the Commonwealth agreed to withdraw the three counts of criminal use of a communications facility. Further, the parties agreed to an aggregate sentence of five to ten years of imprisonment, consecutive to any sentence Appellant was already serving. The stipulated facts were entered on the record and, after finding Appellant guilty, the trial court sentenced Appellant according to the sentencing agreement. We affirmed Appellant's judgment of sentence in an unpublished memorandum on December 12, 2014. *See Commonwealth v. Robinson*, 2014 WL 10752295 (Pa. Super. 2014). On April 15, 2015, our Supreme Court denied further review. *See Commonwealth v. Robinson*, 114 A.3d 416 (Pa. 2015).

---

[3] Appellant agreed to a bench trial on stipulated facts, with a negotiated sentencing agreement, in order to preserve his right to challenge the trial court's ruling on his pre-trial motion to dismiss under the IAD. A stipulated bench trial functions similarly to a guilty plea except that a guilty plea constitutes a waiver of all defects and defenses except lack of jurisdiction, invalidity of the guilty plea, and illegality of sentence. *See Commonwealth v. Eichinger*, 108 A.3d 821, 828, (Pa. 2014) (stipulating to evidence is functionally the same as a guilty plea, but preserves rights to challenge pre-trial rulings); *compare Commonwealth v. Main*, 6 A.3d 1026, 1028 (Pa. Super. 2010) ("The entry of a guilty plea constitutes a waiver of all defects and defenses except lack of jurisdiction, invalidity of the plea, and illegality of the sentence.").

On April 30, 2015, Appellant filed a *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended PCRA petition. The PCRA court held an evidentiary hearing on December 19, 2016 and ultimately denied Appellant relief by opinion and order entered on March 27, 2017. This timely appeal followed.[4]

Appellant raises the following issues for our review:

A. The [PCRA c]ourt committed an error of law and/or abused its discretion in denying [Appellant's] PCRA claim [that trial counsel was ineffective for failing to bring a motion] pursuant to Pa.R.Crim.P. 600 regarding [Appellant's] right to a speedy trial, when the Commonwealth failed to use due diligence in bringing [Appellant] to trial within the statutory requirement.

B. The [PCRA c]ourt committed an error of law and/or abused its discretion in denying [Appellant's] PCRA claim of an illegal sentence, whereby the [trial c]ourt imposed sentence outside of the sentencing guidelines without disclosing, in open court at the time of sentencing, a statement of reason or reasons for the sentence imposed. In every case where a court of record imposes a sentence outside the sentencing guidelines[, there] shall be recorded on the guideline sentence form a copy of which shall be transmitted to the Pennsylvania commission on sentencing.

C. The [PCRA c]ourt committed an error of law and/or abused its discretion in denying [Appellant's] PCRA claim of an illegal sentence, [based on the contention that] the [trial c]ourt

_____

[4] Appellant filed a notice of appeal on April 3, 2017. On April 10, 2017, the PCRA court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on April 28, 2017. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 18, 2017, which also incorporated its prior decision entered on March 27, 2017.

> improperly imposed mandatory minimum sentences on each count.

> D. The [trial c]ourt committed an error of law and/or abused its discretion in denying [Appellant's] PCRA claims related to Pa.R.Crim.P. 620 (jury waiver) when trial counsel failed to advise [Appellant] of his constitutional right to a jury trial and the [trial c]ourt failed to ascertain whether [Appellant] knowingly and voluntarily waived his right to a jury trial pursuant to Pa.R.Crim.P. [] 620.

Appellant's Brief at 5.

Appellant's first and fourth claims allege, under the PCRA, that trial counsel was ineffective. We will examine those issues first. Our standard and scope of review are as follows:

> An appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

> To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner.

> Furthermore, a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him.

Counsel's assistance is deemed constitutionally effective once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test.

**Commonwealth v. Freeland**, 106 A.3d 768, 775 (Pa. Super. 2014) (internal citations, quotations and brackets omitted).

In his first issue presented, Appellant claims that trial counsel was ineffective for failing to raise a violation of Pa.R.Crim.P. 600 prior to the commencement of trial. Appellant's Brief at 9.[5] Appellant avers that the trial court erred by determining that the Commonwealth exercised due diligence in bringing Appellant to trial within 365 days of filing the criminal complaint against him. **Id.** at 13-14. More specifically, Appellant argues that "[a]t the time the charges were filed [in June 2012], Appellant resided in Baltimore, Maryland at the residence listed on the original criminal complaint[,]" but "[t]he record is void of any evidence to show that law enforcement tried to serve a warrant or otherwise secure Appellant's apprehension when Appellant's whereabouts were admittedly known to the Commonwealth." **Id.** at 14. Appellant maintains that "[o]nce his whereabouts were confirmed" the Commonwealth "failed to contact the

---

[5] Appellant's trial counsel sought dismissal of the charges under the IAD prior to jury selection by filing a motion to dismiss on December 3, 2013, arguing that Appellant was not brought to trial in Pennsylvania within 180 days of his request for final disposition of the charges. The trial court denied relief and we affirmed. **See Commonwealth v. Robinson**, 2014 WL 10752295 (Pa. Super. 2014) (unpublished memorandum). Appellant is now claiming that trial counsel also should have raised a Rule 600 claim, in addition to a claim under the IAD, to challenge this same period that he spent in custody in Maryland.

Baltimore City Detention Center to inquire about Appellant's availability for trial in Pennsylvania[,]" "simply put a detainer on Appellant[,]" and did not make a request for extradition. *Id.* at 16. "Only because Appellant was pro-active and took the onus upon himself [to request a transfer from Maryland pursuant to the detainer] to face charges in Pennsylvania, was Appellant finally transported to Adams County on June 6, 2013." *Id.* at 21. Appellant contends that these actions constitute a lack of due diligence by the Commonwealth and trial counsel should have sought dismissal of the charges, with prejudice, under Rule 600. *Id.* at 22.

Regarding Rule 600, we have stated:

The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters ... courts must carefully factor into the ultimate equation not only the prerogatives of the individual

accused, but the collective right of the community to vigorous law enforcement as well.

Rule 600, [] provides, in pertinent part, that "trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). For purposes of computing when trial must commence, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included.... Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). "When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated." Pa.R.Crim.P. 600(D)(1).

The Comment to the Rule explains the computation of time, in relevant part, as follows:

> For purposes of determining the time within which trial must be commenced pursuant to paragraph (A), paragraph (C)(1) makes it clear that any delay in the commencement of trial that is not attributable to the Commonwealth when the Commonwealth has exercised due diligence must be excluded from the computation of time Thus, the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. If the delay occurred as a result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. In determining whether the Commonwealth has exercised due diligence, the courts have explained that "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort."

Pa.R.Crim.P. 600, Comment (citations omitted).

***Commonwealth v. Plowden***, 157 A.3d 933, 936–37 (Pa. Super. 2017) (case citations, quotations and original brackets omitted).

> Moreover, we recognize the Comment to Rule 600 further states:
>
> In addition to any other circumstances precluding the availability of the defendant or the defendant's attorney, **the defendant should be deemed unavailable for the period of time** during which the defendant contested extradition, or a responding jurisdiction delayed or refused to grant extradition; or during which the defendant was physically incapacitated or mentally incompetent to proceed; **or during which the defendant was absent under compulsory process requiring his or her appearance elsewhere in connection with other judicial proceedings**.

Comment, Pa.R.Crim.P. 600 (emphasis added).

Here, upon review of the record, at the PCRA hearing, Appellant admitted that he was arrested in Maryland on September 19, 2012 and facing trial for charges there. N.T., 12/20/2016, at 16. Thus, by his own admission, Appellant was in custody in connection with other judicial proceedings. For this reason, we could find Appellant was unavailable during the time period of September 19, 2012 (when he was arrested and jailed in Maryland) until June 6, 2013 (when he was returned to Pennsylvania) for Rule 600 purposes.

"A criminal defendant who is incarcerated in another jurisdiction is unavailable within the meaning of Rule 600 if the Commonwealth demonstrates by a preponderance of the evidence that it exercised due diligence in attempting to procure the defendant's return for trial." ***Commonwealth v. McNear***, 852 A.2d 401, 404 (Pa. Super. 2004) (citation

omitted). "The Commonwealth's stewardship [] must be judged by what was done rather than by what was not done" in Rule 600 cases. **Commonwealth v. Selenski**, 919 A.2d 229, 232 (Pa. Super. 2007).

In addressing Appellant's current claim, the PCRA court first noted that "the history in bringing [Appellant] to trial has been extensively discussed by both [the trial court] and the Superior Court in the context of the IAD." PCRA Court Opinion 3/27/2017, at 8. Moreover, the PCRA court recognized that Appellant did not cite any law, and our independent research on appeal did not reveal, "that the Commonwealth must comply with the time requirements of both the IAD and Rule 600 independently." *Id.* at 9 n.8. Regardless, for the reasons that follow, we conclude that the Commonwealth complied with the Rule 600 time requirements by filing a detainer with Maryland authorities.

The PCRA court further opined that "a panel of the Superior Court, in *dicta*, signaled the Commonwealth would meet its due diligence requirement by initiating extradition proceedings within 365 days from the filing of the complaint for a defendant imprisoned in another state." PCRA Court Opinion 3/27/2017, at 8 n.8, *citing* **Commonwealth v. Booze**, 947 A.2d 1287, 1292 (Pa. Super. 2008). In **Booze**, "the Commonwealth knew [Booze] was being held in Maryland yet failed to follow the proper steps to secure her upon the disposition of the Maryland charges." **Booze**, 947 A.2d at 1291. "Although the Commonwealth faxed a copy of the complaint to the Maryland authorities, there were no assurances made on behalf of Maryland that this

- 10 -

would in fact serve as a detainer." ***Id.*** We determined that the Commonwealth did not exercise due diligence because it did not initiate extradition proceedings or file a formal detainer with the proper authorities in Maryland. ***Id.*** However, we suggested that "the Commonwealth should at least *initiate* extradition proceedings within 365 days from the filing of the complaint for defendants who are imprisoned in another state in order to meet its duty as to due diligence [under Rule 600]." ***Booze***, 947 A.2d at 1292 (emphasis in original). It does not appear that our appellate courts have addressed what actions constitute the "initiation of extradition."

Next, we examine the case law cited by Appellant regarding detainers and due diligence and, for the reasons that follow, reject his reliance on them. In arguing his Rule 600 claim, Appellant principally relies on two of this Court's prior decisions: ***Commonwealth v. Alexander***, 464 A.2d 1376 (Pa. Super. 1983)[6] and ***Commonwealth v. Colon***, 87 A.3d 352 (Pa. Super. 2014). ***See*** Appellant's Brief at 12, 18, 20, and 22. In ***Colon***, the Commonwealth only presented evidence regarding efforts to locate Colon, before filing a criminal complaint against him. Thereafter, we noted that "although the Commonwealth asserted that 'Trooper Scott faxed a copy of the [Pennsylvania] complaint' to the state institution in which [Colon] was

---

[6] While Appellant purports to cite to a case captioned "***Commonwealth v. Hamilton***" at page 22, n.22 in his appellate brief, the legal citation goes to ***Alexander***, **supra**.

confined, and that 'a detainer was lodged against [Colon] therefore assuring his release from state custody' no evidence was presented to support this assertion." **Colon**, 87 A.3d at 359. Here, there is no dispute that a detainer was filed against Appellant. Thus, **Colon** is inapplicable.

Next, Appellant relies upon our decision in **Alexander**. In that case, the Commonwealth filed a complaint against Alexander in March of 1979. Alexander assured police he would turn himself in, but he did not. Thereafter, Pennsylvania police entered Alexander's information into the National Crime Information Center. In January of 1980, Pennsylvania police received a call that Alexander was arrested in New Jersey and that there were outstanding charges pending against him there. On January 22, 1980, the Commonwealth learned that Alexander was incarcerated in New Jersey. The Commonwealth took no action, however, until it filed a detainer on March 27, 1980, after Alexander received his New Jersey sentence on February 27, 1980. Following Alexander's conviction in Pennsylvania, he appealed to this Court asserting that his right to a speedy trial had been denied. We agreed, reasoning that the 65-day period between January 22, 1980 (when the Commonwealth became aware of Alexander's whereabouts) and March 27, 1980 (when the Commonwealth requested Alexander's return from a correctional facility in New Jersey under the Detainers Act) was not excludable under Rule 600's predecessor because the Commonwealth failed to act for an extended period of time after learning of Alexander's whereabouts. **See Alexander**, 464 A.2d at 1385-1385. We further held

that the Commonwealth's insufficient efforts to return Alexander to trial in Pennsylvania over the next six months constituted further grounds to award relief. As we explain below, these facts are not present in this case.

Although decisions from other states, as well as the opinions and standards of the American Bar Association (ABA), are not binding authority upon us, we may look at them for persuasive value. ***See Commonwealth v. Maguigan***, 511 A.2d 1327, 1336 (Pa. 1986).

The American Bar Association Standards for Criminal Justice provides:

**Standard 12-3.1. Prosecutor's obligations; notice to and availability of prisoner**

To protect the right to speedy trial of a person serving a term of imprisonment either within or without the jurisdiction, it should be provided by rule or statute and, where necessary, interstate compact that:

    (a)    if the prosecuting attorney knows that a person charged with a criminal offense is serving a term of imprisonment in a penal institution of that or another jurisdiction, he or she must promptly:

        (i)        undertake to obtain the presence of the prisoner for trial; or

        (ii)      cause a detainer to be filed with the official having custody of the prisoner and request the official to so advise the prisoner and to advise the prisoner of his or her right to demand trial[.]

American Bar Association, *Standards for Criminal Justice,* Standard 12-3.1 (2d ed.1980).

The commentary following ABA standard 12-3.1 states that the

above standard, addressed to the broader problem of a prisoner's right to speedy trial, requires the prosecutor to initiate procedures whereby the prisoner may demand trial whenever the prosecutor does not choose to undertake an immediate trial.

American Bar Association, *Standards for Criminal Justice,* Standard 12-3.1, Commentary at 12.37.

Moreover, the commentary to ABA standard 12-2.2(a) states that

[t]he prisoner should have the option (1) of demanding trial in order to overcome whatever disadvantages flow from the fact a detainer has been lodged against him, or (2) of not making the demand in the hope that the charges will be dropped before or at the time he completes his sentence [in the foreign jurisdiction].

American Bar Association, *Standards for Criminal Justice,* Standard 12-2.2, Commentary at 17-18.

Several courts have implemented the above-mentioned American Bar Association standards in determining due diligence requirements under state speedy trial right rules. *See **State v. Anderson***, 828 P.2d 1161, 1165 (Wash. App. 1992) ("While requiring prosecutors to lodge detainers against defendants and promptly secure their presence for trial may result in additional expense or give rise to some of the problems associated with detainers, these considerations do not outweigh the fundamental concerns underlying a defendant's right to a speedy trial."); ***Conway v. State***, 707 P.2d 930, 936 (Alaska App. 1985) ("The prosecutor must either undertake to obtain the presence of the prisoner for trial by, for example, instituting extradition proceedings or filing a *habeas corpus* petition with the court in the jurisdiction in which the prisoner is incarcerated, seeking the defendant

- 14 -

for purposes of trial, or the prosecutor must file a detainer with the appropriate officials and request that the defendant be made aware of the detainer.").

Moreover, several other jurisdictions have examined their speedy trial rules, in conjunction with federal and state constitutional principles, and determined that lodging detainers constitutes due diligence. *See State v. Grant*, 738 P.2d 106, 109 (Montana 1987) ("The time chargeable to defendant began on January 22, 1985, when the State of Montana issued the first detainer to defendant and the State of Idaho notifying them of charges pending against defendant in Montana. That time, as chargeable to defendant, ceased to run on June 19, 1985[,] when defendant asserted his right to a speedy trial by requesting final disposition of the charges against him in Montana.... Knowing that charges were pending against him in Montana, it was up to defendant to request speedy and final disposition of the charges against him."); *see also O'Bryan v. State*, 326 So.2d 83, 87 (Fla. App. 1976) ("The period for speedy trial is made to commence on the concurrence of the foreign prisoner's demand for trial and the State's filing of a detainer[.]"); *see also Eaddy v. State*, 352 So.2d 98 (Fla. App. 1977) (Filing of a detainer against an accused who is in prison outside jurisdiction of authority which filed detainer does not activate 180-day period within which accused must be tried under speedy trial rule; rather, speedy trial time begins to run when authority which filed detainer obtains custody of accused); *see also State v. Wood*, 924

- 15 -

S.W.2d 342, 348 (Tenn. 1996) ("Wood deliberately chose to forgo a speedy trial request, hoping instead that the Tennessee charges would die of neglect. He acquiesced in the delay from the time he learned of the detainer in 1984 until 1990, after Alabama had offered conditional parole."); **see also State v. Dolack**, 533 P.2d 1282, 1292 (Kan. 1975) (To obtain a speedy trial guaranteed by state Bill of Rights, as legislatively defined, it is incumbent upon an accused incarcerated in a penal institution to comply with all provisions of legislation applicable to his incarceration, including the preparation of his written request for disposition of detainer to be addressed to court in which the indictment, information or complaint is then pending against him and to the county attorney charged with the duty of prosecuting it.).

In this matter, the PCRA court ultimately determined there was no violation of Rule 600, offering the following calculations:

> The criminal complaint was filed against [Appellant] on June 17, 2012. Therefore, the mechanical run-date of 365 days thereafter require[d] the Commonwealth to have brought [Appellant] to trial under Rule 600 on or before June 17, 2013. [Appellant] was arrested in Maryland in September 19, 2012 and returned to this jurisdiction under the IAD on [June 6, 2013].[7] This time is clearly excludable[]. Removal of this [260-day] time period from the mechanical calculation results in an adjusted

---

[7] The PCRA court incorrectly noted the date of Appellant's return to Adams County, Pennsylvania as April 12, 2013. That date is the date on which Appellant's request for disposition of the Pennsylvania charges was received by the Adams County District Attorney's office. Appellant was not returned to Pennsylvania until June 6, 2013.

trial date of approximately [March 4, 2014]. After [Appellant] was returned to this jurisdiction, through counsel, his preliminary hearing date was continued [twice from June 12, 2013] until July 31, 2013. As this [49-day time period] is also excludable, [Appellant's] adjusted Rule 600 run-date extends [to late April 2014]. […T]he charges against [Appellant] were resolved in January 14, 2014. […] Accordingly, [Appellant] is not entitled to relief on his [Rule 600] claim as counsel cannot be held ineffective for failing to pursue a meritless position.

Trial Court Opinion, 3/27/2017, at 8-9 (footnote omitted).

Upon review, we discern no abuse of discretion or error of law in finding no merit to Appellant's Rule 600 claim. Initially we note that Appellant's argument centers primarily on the actions he believes the Commonwealth should have taken; however, we must review only the actions actually taken by the Commonwealth. *See Selenski*, 919 A.2d at 232. The ABA Standards suggest, and courts in Washington and Alaska agree, that in order to comply with speedy trial rights regarding a defendant incarcerated in a foreign jurisdiction, a state must initiate procedures to obtain their presence for trial. Without actually deciding the issue, we suggested as much in *Booze* and are guided by that decision. In further examining the initiation of transfer procedures, we recognize there are two mechanisms available to the Commonwealth to procure a defendant's return to Pennsylvania: (1) by formal extradition or, (2) by lodging a detainer with the foreign jurisdiction so that the defendant can then demand trial. *Jones*, 886 A.2d 689, 695. Thus, we summarily reject Appellant's suggestion that the Commonwealth was required to initiate extradition proceedings. Here, there is no dispute that the Commonwealth, in fact, promptly filed a detainer

against Appellant with Maryland authorities. Other jurisdictions, as well as the ABA, have determined that lodging a detainer qualifies as due diligence for speedy trial purposes. Taken together, the record supports the PCRA court's findings that the Commonwealth took diligent steps to secure Appellant's presence for trial in Pennsylvania, by lodging a detainer with Maryland authorities and informing him that there were outstanding charges against him in Pennsylvania. Appellant then started the extradition process. Accordingly, the time between the Commonwealth's filing of the detainer and Appellant's return to Adams County is excluded from the speedy trial calculation and the PCRA court properly determined that Appellant's time spent in custody in Maryland was excludable under Rule 600. Moreover, since there is no dispute that extensions requested by defense counsel were excludable, it is clear, as the PCRA court found, that the disposition of Appellant's criminal complaint was reached within 365 days after the filing of the criminal complaint when the original mechanical run date is adjusted by the delays attributable to Appellant. Accordingly, we need not review the time period between the filing of the complaint and Appellant's subsequent arrest in Maryland. As such, trial counsel was not ineffective for failing to raise a Rule 600 claim. Hence, Appellant's first issue fails.

In his fourth issue presented, Appellant claims that trial counsel was ineffective for failing to advise Appellant of his right to a jury trial pursuant to Pa.R.Crim.P. 620. Appellant's Brief at 38. Appellant claims that the trial court did not orally colloquy him regarding waiver of his right to a jury trial,

and he did not sign a written colloquy. *Id.* at 39. Appellant claims that the trial court erred by determining that he was a savvy criminal defendant who was familiar with the criminal justice system and jury trial waivers when he proceeded to a stipulated bench trial. *Id.* at 40-42. In sum, Appellant claims that "the [trial c]ourt, the Commonwealth, and trial counsel presumed that Appellant knew [his] rights or did not care to confirm said presumption, or just flatly forgot Appellant's constitutional rights and their respective obligations." *Id.* at 43.

Our Supreme Court has stated:

> Of course, lawyers have an obligation to counsel their clients in conjunction with the waiver of basic rights, including the waiver of a jury; but the mere absence of [an on-the-record] oral waiver colloquy does not automatically prove that a right was relinquished unknowingly or involuntarily and that the trial lawyer was ineffective for causing the waiver. When a presumptively-valid waiver is collaterally attacked under the guise of ineffectiveness of counsel, it must be analyzed like any other ineffectiveness claim. Such an inquiry is not resolved by the mere absence of an oral waiver colloquy; instead, the analysis must focus on the totality of relevant circumstances. Those circumstances include the defendant's knowledge of and experience with jury trials, his explicit written waiver (if any), and the content of relevant off-the-record discussions counsel had with his client.
>
> *          *          *
>
> Absence of an oral colloquy alone does not prove that a jury waiver was in fact unknowing or involuntary; rather, the PCRA court must look to the totality of the circumstances including the discussions between the lawyers and their clients regarding the jury waiver. The analysis regarding the underlying merits of appellants' ineffectiveness challenge must be more precise and must account for all relevant circumstances surrounding the waiver.

***Commonwealth v. Birdsong***, 24 A.3d 319, 339 (Pa. 2011) (internal

citations, quotations, and ellipses omitted).

Furthermore, we have previously determined:

For a waiver to be knowing, the defendant must be made aware of the "essential ingredients" of the right he or she is waiving to ensure there is an understanding of the significance of what he or she is giving up.

For example, for a defendant to knowingly and intelligently waive his right to a jury trial, the defendant must know the essential ingredients, basic to the concept of a jury trial, including the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel.

***Commonwealth v. Baker***, 72 A.3d 652, 667 (Pa. Super. 2013) (internal

citations and most quotations omitted).

On this issue, the trial court determined:

Although instantly an oral colloquy was not conducted with [Appellant], he undoubtedly understood his rights at the time of waiver. [Appellant] did not present before the [c]ourt as a first [time] offender[,] but rather had previously been convicted of two felony drug offenses. Trial counsel's hearing testimony as to [Appellant's] sophistication and knowledge of criminal law is corroborated by his numerous *pro se* pleadings in this matter as well as his discussions with the [c]ourt during various proceedings. This fundamental knowledge of his rights was supplemented at the time of his arraignment when he waived formal arraignment and acknowledged in writing that he received and understood his rights including the right to a jury trial. Additionally, trial counsel testified that on at least two occasions following arraignment, he discussed with [Appellant] his right to a jury trial. On one of those occasions, [Appellant] initialed and signed a plea colloquy.

PCRA Court Opinion, 3/27/2017, at 10-11 (footnotes omitted). The PCRA court found trial counsel's testimony credible and concluded that Appellant understood his right to a jury trial prior to entering his plea. *Id.* at 11-12.

Upon review, we agree that although the trial court did not formally advise Appellant of his right to a trial by jury, based upon the totality of the circumstances, Appellant was aware of such right before opting to proceed with a stipulated bench trial. Here, the trial court credited trial counsel's testimony that he discussed the essential elements of the right to a jury trial with Appellant. We will not usurp that determination on the record before us. Moreover, while not admitted into evidence at the stipulated bench trial, Appellant had signed and initialed a written guilty plea colloquy earlier. That written colloquy addressed all of the questions that the trial court should have covered in an oral jury waiver colloquy, including the requirements that the jury be chosen from members of the community, that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel. Moreover, while this written colloquy was not entered into the record at the time of the stipulated bench trial, Appellant does not contest that he signed it or claim that trial counsel did not discuss it with him prior to the stipulated trial. Finally, the PCRA court properly considered the fact that Appellant is a savvy defendant, having been twice convicted of drug-related felonies and filing numerous legally supported *pro se* documents in this matter. Thus, we agree with the trial court that Appellant

was properly informed of his right to a jury trial and there is no merit to Appellant's claim that counsel was ineffective in this regard.

Appellant's second and third claims involve somewhat related sentencing issues, so we will examine them together. In his second issue, Appellant avers that the trial court abused its discretion or erred as a matter of law in imposing a sentence outside of the sentencing guidelines without stating the reason for the deviation on the record. Appellant's Brief at 24-25. More specifically, Appellant collectively challenges his three concurrent sentences for PWID, five to ten years of imprisonment each, contending that "[w]ith a prior record score of [four] (and an offense gravity score of [seven] or [eight] depending on the weight of the drug) the [s]tandard [g]uideline range for PWID is 21 to 27 months." *Id.* at 26. Appellant claims that the sentencing guidelines were inaccurately calculated and ignored, and that the trial court never explained the reasons for deviating from them. *Id.* at 28. Instead, Appellant suggests that the trial court "only colloquied Appellant on the maximum penalties he could face for each charge [and d]efense counsel never objected to this error[.]" *Id.* at 29.

In his third issue presented, Appellant "believes he was sentenced to mandatory minimum sentences" on each count of PWID and "relies on the sentencing guideline forms filled out after sentencing to support his claim." *Id.* Appellant posits that "[i]f the [trial c]ourt sentenced Appellant to a mandatory minimum sentence, then Appellant believes said sentences are

illegal in consideration of ***Alleyne v. U.S.***, 133 S.Ct. 2151 (2013)[.]" ***Id.*** at 31.

Initially, we note that Appellant commingles two legally distinct sentencing issues, the discretionary aspects of sentencing and the illegality of his sentence.[8]  We have previously determined:

> the term "illegal sentence" refer[s] to a class of cases that includes: (1) claims that the sentence fell outside of the legal parameters prescribed by the applicable statute; (2) claims involving merger/double jeopardy; and (3) claims implicating the rule in ***Apprendi v. New Jersey***, 530 U.S. 466 (2000). [...I]llegal sentencing claims challenge the fundamental legal authority of the court to impose the sentence that it did.

***Commonwealth v. Farrow***, 168 A.3d 207, 212 (Pa. Super.  2017) (some quotations and citations omitted).

"A challenge to the legality of a particular sentence may be reviewed by any court on direct appeal; it need not be preserved in the lower courts to be reviewable and may even be raised by an appellate court *sua sponte*." ***Batts***, 163 A.3d at 434.  We review the legality of a sentence *de novo* and our scope of review is plenary.  ***Farrow***, 168 A.3d at 212 (internal citation,

---

[8] "For appellate review purposes, challenges to a criminal sentence typically fall into one of two categories, implicating either the legality of the sentence or the discretionary aspects of the sentence." Commonwealth v. Batts, 163 A.3d 410, 434 (Pa. 2017). "[A] claim challenging a sentencing court's legal authority to impose a particular sentence presents a question of sentencing legality." ***Id.*** "This distinction is critical, as the determination also encompasses matters of issue preservation, [an appellate court's] jurisdiction to decide the question presented, and the level of deference the reviewing court must give to the decision of the sentencing court." ***Id.***

quotation, and brackets omitted). Our Supreme Court has instructed that we must presume that statutes are constitutional and in order to declare a statute unconstitutional it must clearly, plainly, and palpably violate the constitution. ***Id.***

Here, Appellant was sentenced concurrently to five to ten years of imprisonment for each of three counts of PWID cocaine and for one count of conspiracy. The statutory maximum sentence for PWID cocaine is fifteen years of incarceration. ***See*** 35 P.S. § 780-113(f). Moreover, as a repeat felony offender,[9] Appellant was exposed to twice that prison time on each PWID offense. ***See*** N.T., 1/14/2014, at 935; ***see also*** Trial Court Opinion, 3/27/2017, at 10 (Appellant "had previously been convicted of two felony drug offenses."); ***see also*** 35 P.S. § 780-115(a) ("Any person convicted of a second or subsequent offense [of PWID] or of a similar offense under any statute of the United States or of any state may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.") Inchoate crimes, like conspiracy, have the same maximum sentences as the underlying crimes to which they relate, but are not subject to sentencing enhancements. ***See Commonwealth v. Hoke***, 962 A.2d 664, 668, 599 Pa. 587, 593 (Pa. 2009). Thus, Appellant's statutory maximum penalty for conspiracy was also fifteen years of

_____

[9] Appellant does not challenge his prior felony convictions or contend his prior criminal record was inaccurately reflected before entering his plea.

- 24 -

imprisonment, but not subject to doubling under the repeat offender enhancement.

Despite Appellant's attempt to characterize all mandatory minimum sentences as illegal following *Alleyne/Apprendi*, our Supreme Court has determined Section 780-115 is constitutional. *See Commonwealth v. Aponte*, 855 A.2d 800, 809 (Pa. 2004) (statute doubling statutory maximum penalty for PWID upon proof of a prior conviction without requiring proof beyond a reasonable doubt before a jury did not violate defendant's due process rights where prior drug convictions were capable of objective proof). Here, each of Appellant's five to ten year sentences fell within constitutional, statutory maximums for the various crimes and, as such, Appellant did not receive illegal sentences.

Appellant's related claim that the trial court failed to state its reasons for deviating from the sentencing guidelines is a discretionary aspect of sentencing claim, rather than a challenge to the illegality of sentence. *See Commonwealth v. McLaine*, 150 A.3d 70, 76 (Pa. Super. 2016). Unlike legality of sentence claims, which can be raised for the first time on appeal as long as the reviewing court has jurisdiction, discretionary aspects of sentencing claims must be properly raised below, even those couched in ineffective assistance of counsel under the PCRA. *See Commonwealth v. Taylor*, 65 A.3d 462, 465 (Pa. Super. 2013). Appellant did not raise his claim that the trial court failed to state its reasons for deviating from the

sentencing guidelines in his PCRA petition or his amended PCRA petition. Thus, Appellant waived this aspect of his sentencing claim.

Regardless, the issue is otherwise without merit. "Assuming [a] plea agreement is legally possible to fulfill, when the parties enter the plea agreement on the record, and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement." *Commonwealth v. Parsons*, 969 A.2d 1259, 1268 (Pa. Super. 2009). If the sentencing court gives a defendant "a lesser sentence than called for in the parties' agreement, the court overstep[s] its bounds, defeat[s] the Commonwealth's rightful expectations, and frustrate[s] the *quid pro quo* of the plea bargain." *Id.* at 1269–1270. Appellant has not cited law, and our independent research has not revealed any, that would suggest that the trial court has to consider the sentencing guidelines prior to accepting a negotiated plea agreement where the sentences all fall within the statutory guideline maximums. Here, the parties placed the terms of the completely negotiated plea agreement on the record and the trial court properly accepted it and is now bound by it. Moreover, Appellant does not challenge the plea process or otherwise suggest that his plea was entered unknowingly, involuntarily, or unintelligently. Accordingly, there is no merit to Appellant's sentencing claims.

Order affirmed.

Judge Strassburger joins the memorandum.

Judge Dubow concurs in result of the memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/22/2018